## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**ROY W. MILLER,**
**Claimant Below, Petitioner**

**vs.)** **No. 21-0206** (BOR Appeal No. 2055822)
                    (Claim No. 2017004014)

**DYNAMIC ENERGY, INC., LWF,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Roy W. Miller, by Counsel James D. McQueen, Jr., appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Dynamic Energy, Inc., LWF, by Counsel Steven K. Wellman and James W. Heslep, filed a timely response.

The issue on appeal is medical benefits. In decisions dated August 28, 2019, and September 18, 2019, the claims administrator denied authorization of a lumbar MRI and referral to WVU Neurosurgery. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decisions in its September 21, 2020, Order. The Order was affirmed by the Board of Review on February 8, 2021.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

(c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

1

(d) If the decision of the board represents an affirmation of a prior ruling by both the commission and the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo reweighing of the evidentiary record . . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Miller injured his cervical spine when he was jarred while operating heavy machinery on July 29, 2016. A cervical CT scan performed on August 12, 2016, showed no fracture or subluxation. Treatment notes from Princeton Community Hospital dated August 25, 2016, indicated that Mr. Miller reported neck pain, numbness around his throat, and arm tingling after being jarred hard at work on July 29, 2016. He was diagnosed with cervical strain.

Mr. Miller was treated for the compensable injury by Syed Zahir, M.D., his treating physician, beginning August 30, 2016. The notes indicate Mr. Miller was treated for cervical sprain, lumbosacral sprain, degenerative lumbosacral arthritis, cervical discogenic disease, lumbosacral discogenic disease, cervical arthritis, cervical radiculitis, chronic neck pain, chronic back pain, herniated cervical disc, right rotator cuff tear, bilateral carpal tunnel syndrome, and right-hand synovitis. The claim was held compensable for neck and lumbar sprains on September 19, 2016.

A lumbar MRI performed on October 5, 2016, showed mild disc space narrowing, disc desiccation, and a mild disc bulge at L5-S1. Mr. Miller was treated by Andrew Thymius, M.D., from January 25, 2017, through September 6, 2017, for neck pain, right shoulder pain, upper arm pain, and low back pain due to his compensable injury. Dr. Thymius diagnosed low back pain; neck strain; low back strain; cervicalgia; cervical radiculopathy; cervical disc displacement; lumbosacral disc displacement; and cervical, lumbar, and lumbosacral spondylosis without myelopathy or radiculopathy. Mr. Miller attempted conservative treatment, but his pain was not lessened or resolved. Dr. Thymius concluded that there was nothing further he could do for Mr. Miller and referred him to Rajesh Patel, M.D.

In a January 25, 2017, Independent Medical Evaluation, Bruce Guberman, M.D., diagnosed chronic post-traumatic cervical strain superimposed on preexisting cervical disc disease associated with a 2006 work injury. He also diagnosed chronic post-traumatic lumbar strain. Dr. Guberman found that Mr. Miller had not reached maximum medical improvement. He recommended the completion of lumbar spine injections and a Functional Capacity Evaluation.

2

In a treatment note, Rajesh Patel, M.D., diagnosed cervical sprain, lumbar sprain, moderate retrolisthesis at L5-S1, lumbar disc bulging at L5-S1, neural foraminal narrowing From C3-C6, right shoulder rotator cuff syndrome or partial tear, right shoulder sprain, and right C5-6 radiculitis on June 14, 2017. He recommended a back brace, right shoulder MRI, lumbar MRI, upper extremity EMG, and facet injections. An EMG was performed on September 20, 2017, and showed carpal tunnel syndrome but no evidence of cervical radiculopathy. A lumbar MRI showed degenerative changes and posterior bulging at L5-S1 but no herniation on September 27, 2017.

In a January 16, 2018, Independent Medical Evaluation, Dr. Guberman diagnosed chronic post-traumatic cervical and lumbosacral sprains. Mr. Miller had reached maximum medical improvement. Dr. Guberman assessed 1% cervical impairment and 8% lumbar impairment for a total of 9% permanent partial disability.

On March 9, 2018, Mr. Miller returned to Dr. Zahir and was diagnosed with cervical sprain, cervical disc cervical arthritis, radiculitis, lumbosacral spine arthritis, chronic back pain, rotator cuff pathology, stiffness of the right shoulder, discogenic disease, and degenerative disc. A neurosurgical consultation was recommended.

Joseph Grady, M.D., performed an Independent Medical Evaluation on July 10, 2018, in which he assessed 7% right shoulder impairment for the diagnosis of post-traumatic adhesive capsulitis. In a July 19, 2018, Physician Review, Rebecca Thaxton, M.D., recommended refusal of a referral to WVU Neurosurgery for neck and back pain.

The claims administrator denied a referral to WVU Neurology on July 26, 2018. In an August 2, 2019, Record Review, Randall Short, D.O., recommended denial of a lumbar MRI and a neurosurgical consultation. The claims administrator denied authorization of a referral to WVU Neurosurgery on August 9, 2019.

A lumbar x-ray showed mild degenerative changes at L5-S1 and no fracture or subluxation on August 12, 2019. In an August 28, 2019, decision, the claims administrator denied authorization of a lumbar MRI and a referral to WVU Neurosurgery. On September 5, 2019, Theodore Werblin, M.D., saw Mr. Miller for evaluation of his eyes and frequent headaches. Dr. Werblin determined that Mr. Miller's headaches were neurological and unrelated to his eyes. Referral to a neurologist was recommended. The claims administrator denied authorization of a lumbar MRI and a referral to WVU Neurology on September 18, 2019.

Mr. Miller testified in a November 14, 2019, deposition that his symptoms had worsened, especially in his arms. He also stated that he still suffers from neck pain, back pain, and severe headaches. Mr. Miller testified that he had received no treatment for his headaches. He asserted that his head started hurting immediately following his work-related injury and was progressively worsening. Mr. Miller described episodes where his eyes would roll back in his head, causing dizziness and blurry vision. When questioned about carpal tunnel syndrome, Mr. Miller denied any symptoms prior to the compensable injury. Following the work-related injury, Mr. Miller developed numbness and pain in the fingers of his right hand. Mr. Miller testified that at the time of his compensable injury, he had no neck symptoms and was pain free.

Dr. Zahir testified in a November 14, 2019, deposition that he specialized in orthopedic hand surgery and had treated Mr. Miller since 2016. Dr. Zahir opined that Mr. Miller suffered from pain and stiffness in his neck as well as pain that radiated into the arms and legs. For these symptoms, Dr. Zahir requested a lumbar MRI and referral to WVU Neurosurgery to determine if Mr. Miller required further treatment, including surgery. If surgery was not required, Dr. Zahir opined that Mr. Miller would be at maximum medical improvement. Dr. Zahir stated that a new MRI was necessary because the ones of record are old. He asserted that he was unable to determine if Mr. Miller's symptoms were the result of degenerative changes or the compensable injury without a new MRI. Dr. Zahir noted that Mr. Miller was previously granted a 7% impairment award. He testified that he had diagnosed carpal tunnel syndrome and while the condition was occupational in nature, it was unrelated to the injury in this claim.

Treatment notes by Dr. Zahir dated November 15, 2019, through May 26, 2020, indicate Mr. Miller was seen for chronic neck and back pain, discogenic disease upper and lower extremity radiculitis, and right knee pain. Dr. Zahir noted that Mr. Miller had undergone right shoulder surgery twice. On examination, Mr. Miller had numbness in both upper extremities, which Dr. Zahir opined was the result of carpal tunnel syndrome and Mr. Miller's neck issues.

A lumbar MRI, performed on April 27, 2020, showed L5-S1 disc space narrowing, a small L5 osteophyte, mild facet arthropathy, unchanged mild retrolisthesis of L5 on S1, medial bilateral mild disc protrusion, no significant canal stenosis or foraminal narrowing, unchanged L2 hemangioma, and straightening of the normal lumbar lordosis. A cervical MRI showed C3-4 mild disc space narrowing, a moderate right paramedian to foraminal disc osteophyte complex, some facet arthropathy, moderate narrowing of the right neural foramen, and mild mass effect of the right thecal sac which was unchanged. The MRI also showed increased mild foraminal narrowing at C2-3 and unchanged right foramina narrowing at C4-5 and C5-6. In a June 30, 2020, addendum, Dr. Zahir stated that WVU Neurosurgery requires an MRI taken within six months of a consultation.

The Office of Judges affirmed the claims administrator's decisions denying requests for a lumbar MRI and a referral to WVU Neurosurgery in its September 21, 2020, Order. It found that the claim is compensable for cervical and lumbar sprains/strains and there had been no request for additional conditions. The Office of Judges noted that Mr. Miller had two MRIs, neither of which showed acute changes. An EMG showed no evidence of radiculopathy. The Office of Judges stated that Mr. Miller had already undergone a neurosurgical consultation with Dr. Patel. Further, Dr. Guberman examined Mr. Miller and found him to be at maximum medical improvement. The Office of Judges concluded that more likely than not, Mr. Miller's current symptoms are the result of preexisting degenerative conditions, not the compensable injury. The Office of Judges noted that a second opinion with a neurosurgeon was already denied by the claims administrator on July 26, 2018, and that decision was not appealed. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on February 8, 2021.

On appeal, Mr. Miller argues that the requested medical treatment should not be denied based on the "mere technicality" of the absence of a Diagnosis Update form. The argument

misunderstands the point of the Diagnosis Update form. The form is not a mere formality, it is the first step in the addition of a diagnosis to a claim. The procedure for adding a diagnosis to a claim is the same as for compensability. For an injury to be compensable it must be a personal injury that was received in the course of employment, and it must have resulted from that employment. *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970). Evidence must be submitted showing that such diagnosis is the result of the compensable injury, and there must be an analysis of the evidence before a determination is made regarding compensability.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. West Virginia Code § 23-4-3(a)(1) provides that the claims administrator must provide medically related and reasonably required sums for healthcare services, rehabilitation services, durable medical and other goods, and other supplies. A preponderance of the evidence shows that the requested MRI and referral to a neurosurgeon are not necessary for the compensable conditions of lumbar and cervical sprains/strains.

Affirmed.

**ISSUED: September 19, 2022**

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn

5